IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GARRY BROOKS, ) </br> ) </br> Plaintiff, ) </br> v. ) </br> ) </br> MICRON TECHNOLOGY, INC., ) </br> ) </br> Defendant. ) </br>_____ ) | Civil Action No. 1:09-cv-00679-AJT-IDD |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 35) and Defendant's Rule 11 Motion for Sanctions (Doc. No. 37).

### I. Background

Plaintiff Gary Brooks ("Brooks") filed this action against his former employer, Defendant Micron Technology, Inc. ("Micron") alleging that Micron violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Virginia Code Ann. § 65.2-308 when it terminated Brooks' employment on September 15, 2008. Brooks initiated this action on June 18, 2009, and filed amended complaints on September 25, 2009, November 13, 2009, and January 14, 2010. The pending Motion for Summary Judgment (Doc. No. 35) is directed to the claims made in Brooks' January 14, 2010 third amended complaint (the "Complaint") and this opinion addresses only those claims.[1]

---

[1] On April 9, 2010, after the summary judgment motion had been fully briefed by the parties, the Court granted Brooks' leave to file a fourth amended complaint, which adds a new count alleging failure to accommodate Brooks' disability in violation of the ADA. The first and third counts of the fourth amended complaint are identical to the first and second counts of the third amended complaint. Therefore, this opinion's disposition of those counts in the third amended

In the Complaint, Brooks alleges two counts: (1) discrimination in violation of the ADA based on Micron's mistaken belief that Brooks is disabled and (2) retaliation for Brooks' intention to file a worker's compensation claim in violation of Virginia Code Ann. §65.2-308. A hearing on the Motion for Summary Judgment (Doc. No. 35) and Motion for Sanctions (Doc. No. 37) was held on April 9, 2010, after which the Court took the motions under advisement. For the reasons stated herein, the Court grants Micron's motion for summary judgment and denies Micron's motion for Rule 11 sanctions.

## II. Undisputed Facts

The following facts are undisputed.

### A. Medical History

Brooks, a 42 year old male, was born without thumbs. Brooks' medical history also includes back and knee injuries, carpal tunnel syndrome, and a number of surgeries, including surgery on his right knee in the 1990's and two laminectomies (the surgical removal of the bony arches on one or more vertebrae) in or around 1992. After the first surgery for a herniated disc in 1992,[2] which alleviated some pain, Brooks continued to experience pain in his back and underwent a second surgery for a recurrent herniation on the same disc as well as surgery on another disc, and then a third surgery, during which the doctor attempted to implant a TENS unit in Brooks' back to stimulate nerves. These back surgeries were unsuccessful in resolving Brooks' back pain. In May 1996, Dr. James Weingart performed back surgery on Brooks that resolved back and leg pain Brooks was then experiencing. On October 30, 2000, Brooks had

---

complaint also disposes of the identical counts set forth in counts 1 and 3 (but not count 2) of the fourth amended complaint.

2 It is unclear from the stipulation of facts filed by the parties whether this surgery is one of the two laminectomies or a separate surgery.

surgery on a left shoulder rotator cuff tear that resulted from a fall. In April 2001, Dr. Weingart performed another back surgery to resolve newly developed back and leg pain. The surgery resolved the back pain at that time. However, in June 2003, Dr. Weingart performed another back surgery to resolve newly developed back and leg pain, following which Dr. Weingart recommended Brooks perform back exercises, which Brooks still performs today. Dr. Weingart also instructed Brooks on proper bending and lifting techniques. In November 2005, Brooks was prescribed oxycodone for back pain. Brooks takes the medication as needed when the flare-ups of back pain occur, which is approximately once or twice a year. In November 2007, Brooks consulted with Jennifer Teeter, a physician's assistant, regarding his complaint of back pain. On March 4, 2008, Brooks returned to the doctor's office with a complaint of back pain that began when Brooks handled a 30 pound box at home. On March 15, 2008, pursuant to an order from Ms. Teeter, an MRI of Brooks' back was performed. On April 11, 2008, Brooks began physical therapy, which resolved Brooks' back pain.

### B. Work History

Brooks has a college degree in parks and recreation resources management from Slippery Rock University; and despite Brooks' ongoing medical issues, Brooks has held a number of jobs. However, Brooks was disabled and unable to work from 1992 to 1996, and Brooks received Social Security disability benefits for several years during the 1990's. Brooks has also received workers' compensation benefits including a lump sum settlement. In 1996, Brooks attempted to hold a truck driving job, but had a significant increase in back pain in the months that followed.

In 1999 Brooks had a job with FST Consulting, where he worked until approximately July 2001. From approximately July 2001 until March 2005, Brooks worked for Purity Systems Inc. Brooks was then unemployed for about a month. From approximately April 2005 through

3

March 2006, Brooks worked for Leak Tight Analytical. The work at all of these companies involved the testing of installed gas lines to ensure the quality of the welds, there were no leaks, and the gas lines were ready for service.

### C. Brooks' Employment with Micron

From March 2006 until July 14, 2008, Brooks worked for Applied Mechanical as a contractor at Micron's Manassas, Virginia plant. Based on his work as a contractor there, several Micron supervisors encouraged Brooks to apply to work for Micron. On July 14, 2008, with full knowledge of his lack of thumbs, Micron hired Brooks as a Gas Operations Technician to work in the same facility in Manassas where he had worked as a contractor. Brooks' job as a Gas Operations Technician involved handling cylinders of gases, many weighing over 50 pounds. The required handling of these cylinders included that the cylinders be twisted and pushed into gas cabinets and the smaller cylinders be lifted into the gas cabinets.

Central to Micron's justification for terminating Brooks is that some of these cylinders are filled with highly toxic gases that could result in death upon a person's exposure. The cylinders have safety caps over the valves, but some of the safety caps have to be removed by the Gas Operations Technicians to be placed in some of the gas cabinets. If the technician dropped a cylinder after removing the safety cap, the valve could be sheared off and deadly gas would escape. In an emergency caused by escaped toxic gas, Brooks' job required lifting and putting on his back a self-contained breathing apparatus ("SCBA"), similar to a scuba air tank, weighing over 30 pounds, in order to provide a safe air source to himself or to a co-worker.

Approximately three weeks after Brooks began his employment for Micron, he was examined by Dr. Ross Myerson, a doctor that Micron contracts with to perform physical examinations of Micron employees to determine whether or not the employees are medically

4

qualified. As part of the examination, Dr. Myerson reviewed Brooks' medical history, which included information about Brooks' multiple surgeries. Dr. Myerson also tested Brooks' grip strength by having Brooks hold onto and squeeze Dr. Myerson's outstretched hands. After the examination, Dr. Myerson imposed work restrictions on Brooks, stating "I would not want him lifting [more than] 25 pounds or wearing SCBA." Dr. Myerson also restricted Brooks from handling cylinders of toxic gases, both because of the weight of those cylinders and also because of the risk that Brooks would drop a cylinder, resulting in the release of highly toxic gases. For approximately a month, Micron attempted to find a position for Brooks while implementing Dr. Myerson's restrictions. On September 10, 2008, Micron inquired of Dr. Myerson whether Brooks could handle lifting seventeen pounds as an operator or whether Brooks could safely perform the duties of a lab technician. Dr. Myerson responded that he did not think "it would be wise" for Brooks to lift the seventeen pound items, based on Brooks' shoulder and lumbar surgeries, and that he needed to see the lab technician job description to determine whether Brooks could perform the duties of that job. As it turned out, however, the lab technician position was unavailable, and Dr. Myerson did not complete his assessment of Brooks for that position. Micron was ultimately unable to find an open position for Brooks that complied with the restrictions Dr. Myerson imposed. On September 15, 2008, Micron terminated Brooks' employment.

### III. Legal Standard

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking

summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## IV. ANALYSIS

### A. Count I – Discrimination under the ADA

To establish a discrimination claim under the ADA, the plaintiff must prove that: (1) he has a disability or was regarded as having a disability under the ADA; (2) he is otherwise qualified for the position; and (3) his disability was a motivating factor in the decision to discharge him. *Baird v. Rose*, 192 F. 3d 462, 470 (4th Cir. 1999). Amendments to the ADA went into effect in 2009, but courts have not applied those amendments retroactively. *See Bateman v. American Airlines, Inc.*, 614 F. Supp. 2d 660, 670 (E.D. Va. 2009) (explaining that

6

"the [2008] ADA Amendments do not apply retroactively"). Accordingly, the Court applies the ADA as it existed prior to the 2009 amendments.

### 1. "Regarded As" disabled under the ADA

Under the ADA, to establish a disability, Brooks must show that he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) has been regarded as having such an impairment. *Wilson v. Phoenix Specialty Manufacturing Co.*, 513 F.3d 378, 384 (4th Cir. 2008). Brooks has alleged that Micron regarded him as disabled (not that he is actually disabled), specifically, that he had a physical impairment of his congenital lack of thumbs and previous back surgeries, that Micron mistakenly believed that the physical impairment substantially limited one or more of his major life activities, and that Micron discriminated against him on that basis.

A person is "regarded as" disabled if the employer mistakenly believes that the persons' non-limiting impairment substantially limits one or more major life activities. *Murphy v. United Parcel Serv.*, 527 U.S. 516, 521-22 (1999). "The employer, in other words, must entertain a misperception: 'it must believe . . . that [the individual] has a substantially limiting impairment when, in fact, the impairment is not so limiting.'" *Wilson*, 513 F.3d at 384 (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)). "'Major life activities' refers 'to those activities that are of central importance to daily life,' including walking, seeing, hearing, and manual tasks that are 'central to daily life.'" *Id.* (citing *Toyota Mtr. Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (1999)). A person is perceived as "substantially limited" in his ability to work if the employer perceives him "to be significantly restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 303 (4th Cir. 1998) (quoting 29 C.F.R. § 1630.2(j)(3)(I)). It is "insufficient for a

plaintiff to merely show that the employer was aware of the plaintiff's alleged impairment; rather, the plaintiff must demonstrate that, based on the perceived impairment, the employer regarded the employee *as disabled within the meaning of the ADA."* Hill v. Verizon Maryland, Inc., No. 07-3123, 2009 WL 2060088, *8 (D. Md. July 13, 2009) (internal citations omitted) (emphasis in original). In a "regarded as" case such as this, the analysis "focuses on the reactions and perceptions" of the employer. *Runnebaum v. Nations-Bank of Md., N.A.*, 123 F.3d 156, 172-73 (4th Cir. 1997), *overruled on other grounds*.

In its motion for summary judgment, Micron first argues that Brooks cannot, as a matter of law, establish that Micron regarded Brooks as disabled because Brooks cannot show that the work limitations Micron placed on Brooks – restricting him from lifting or pushing more than twenty-five pounds – reflected a belief that Brooks was substantially limited in a major life activity as a matter of law. Under Fourth Circuit law, "as a matter of law, . . . a twenty-five pound lifting limitation – particularly when compared to an average person's abilities – does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) *abrogated on other grounds*.[3] Micron also argues that Brooks cannot establish that Micron perceived Brooks as significantly restricted in his ability to perform a class of jobs or a broad range of jobs within various classes. In that regard, Micron relies on regulations that state that the "inability to perform a single particular job does not constitute a substantial limitation in major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I). *See also Cline v. Wal-Mart Stores,*

---

[3] The Fourth Circuit noted in *Taylor v. Federal Express Corp.*, 429 F.3d 461 (4th Cir. 2005) that *Williams* should "not be read to create a *per se* rule that a twenty-five pound lifting restriction can *never* constitute a disability. The Supreme Court has made clear that disability determinations require an individualized inquiry." *Id.* at 463 n.2.

8

*Inc.*, 144 F.3d 294, 303 (4th Cir. 1998) (holding that a person is perceived as "substantially limited" in his ability to work if the employer perceives him "to be significantly restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes.")

In response, Brooks argues that Micron perceived Brooks as unable to perform work generally and that the twenty-five pound lifting restriction was just one aspect of tasks that Micron believed Brooks could not perform. In support of that position, Brooks relies on: (1) Dr. Myerson's statement that Brooks could not perform job duties that involved lifting even less than twenty-five pounds; (2) Dr. Myerson's statement at his deposition that he was "quite" concerned about Brooks' lack of thumbs; (3) Dr. Myerson statement that Brooks was a "disaster risk"; and (4) Dr. Myerson's note to Micron imposing the lifting restriction noting that he does not feel Brooks could safely handle the toxic gas tanks, generally.

The Court concludes that a genuine issue of material fact exists as to whether Micron "regarded" Brooks as disabled. Specifically, the Court finds that the work restrictions imposed on Brooks limited more than his ability to lift twenty-five pounds (specifically, Dr. Myerson later references Brooks' inability to lift seventeen pounds) and that Dr. Myerson conveyed to Micron concerns about Brooks' ability to work safely with the toxic gas tanks in any capacity.[4] While even a restriction of lifting seventeen pounds may not "substantially limit" a major life activity, the Court finds that Dr. Myerson's e-mail referencing a greater lifting restriction than he initially communicated to Micron creates a genuine issue of material fact as to whether or not Micron

---

[4] Micron argues that Dr. Myerson's reference to Brooks' inability to lift seventeen pounds in relationship to the operator position is irrelevanat because shortly after that exchange with Dr. Myerson, Micron eliminated that position. However, Dr. Myerson's note regarding the seventeen pound restriction is probative of his perception of Brooks' capabilities, notwithstanding the availability of specific jobs.

9

perceived Brooks as unable to perform a wide variety of jobs and as unable to work generally. "In a perceived disability case, the issue of whether an employer regarded [an individual] as disabled within the meaning of the [ADA] is a matter that the jury decides." *Burkett v. United States Postal Service*, 175 F.R.D. 220 (N.D. W.Va. 1997) (internal citations omitted) (holding ADA claims inappropriate for class certification due to the fact intensive nature of the inquiry into how the employer perceived the disability). Accordingly, the Court concludes that a genuine issue of material fact exists as to whether or not Micron regarded Brooks as disabled.

### 2. "Qualification"

Micron next argues that summary judgment is appropriate even if Micron regarded Brooks as disabled because there is no genuine issue that Brooks is not "otherwise qualified" to perform the job at Micron because he poses a direct threat to himself and others. Pursuant to 42 U.S.C. § 12133, an employer may defend against an allegation of discrimination under the ADA on the grounds that an individual does not meet a qualification requirement that is directed to avoiding a direct threat to the health or safety of the individual or others in the workplace.[5] Micron argues that as a Gas Operations Technician, Brooks was charged with handling heavy cylinders of highly toxic gases and that his physical limitations caused him to be a direct threat to the safety of himself and others in that position.

---

[5] The ADA includes the "direct threat" language as a possible defense to an ADA claim, but also includes the "direct threat" analysis in its qualification standard discussion. 42 U.S.C. §12113 (listing under "Defenses" heading that, in general, "the term 'qualification standards' may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace."). It is therefore unclear on the face of the statute itself which party bears the burden in a "direct threat" analysis. Construing the statue as the Fourth Circuit has in *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 188 (4th Cir. 2002), the Court concludes that, here, Micron has the burden of establishing that Brooks presented a direct threat to himself or others.

10

The "direct threat" or "significant risk" test requires consideration of several factors, including the nature, duration, and severity of the risk, and the probability that the potential injury will occur. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 288 (1987). The Court should not independently assess whether Brooks posed a direct threat, but instead must evaluate whether Micron's decision was objectively reasonable. *Jarvis v. Potter*, 500 F.3d 1113, 1122 (10th Cir. 2007).

Brooks argues that any determination Dr. Myerson made about Brooks' safety risk was not based on a sufficiently individualized assessment to satisfy the ADA, which requires more than stereotypes or generalizations about the effects of a disability. *Rodriguez v. Conagra Grocery Prods. Co.*, 436 F.3d 468 (5th Cir. 2003). Micron argues, however, that Dr. Myerson conducted an examination of Brooks' strength, reviewed Brooks' medical history, and spoke to Ms. Teeter, and therefore performed an individualized assessment of Brooks' medical condition to determine that Brooks posed a safety risk. Micron also notes that Brooks has not proffered a medical opinion contradicting Dr. Myerson's assessment of the risk.

The Court concludes that Dr. Myerson conducted an individualized examination of Brooks and that, based on that examination, he determined that Brooks posed a direct threat to himself and others if he were permitted to continue handling the extremely heavy cylinders containing toxic gases. This case is distinguishable from *Rodriguez*, 436 F.3d at 484, in which the examining physician had no knowledge of the job duties the applicant would be required to perform when he found the applicant unqualified. Here, in contrast, Dr. Myerson concluded, based on his twenty years working with Micron, knowledge of the Gas Operations Technician position, and individualized assessment of Brooks, that due to Brooks' back problems and his performance on the strength test, Brooks might not be able to place the SCBA tank on his back,

11

which would be necessary in an emergency, and also that he might cause a cylinder of toxic gas to fall. There is no dispute that if a cylinder containing toxic gas were to fall, the results could be catastrophic, including deaths of coworkers, or Brooks himself. Accordingly, Dr. Myerson's conclusion that Brooks posed a direct threat to the health or safety of other individuals in the workplace was objectively reasonable. For these reasons, the Court concludes Micron's reliance on Dr. Myerson's recommendations that Brooks be barred from performing the Gas Operations Technician duties was reasonable in light of Micron's conclusion that Brooks posed a direct threat to himself and others. The Court further finds that Brooks has not established that Micron's decision to terminate him based on a belief he posed a direct threat to himself or others was pretext for any discriminatory motive. There are no material facts in dispute as to this defense; and the Court grants summary judgment to Micron on Count I of Brooks' Complaint.[6]

### B. Count II – Retaliation Under Virginia Code § 65.2-308

In Count II of Brooks' Complaint, Brooks alleges that Micron terminated him in retaliation for an intent to file a worker's compensation claim, in violation of Virginia Code § 65.2-308, which states, "[n]o employer or person shall discharge an employee solely because the employee intends to filed or has filed a claim [for worker's compensation]." Brooks bases this claim on Dr. Myerson's statements that he based his work restrictions on Brooks' medical history and a concern that Brooks might hurt himself. Micron argues that Brooks has not

---

[6] The Complaint does not allege a failure by Micron to reasonably accommodate Brooks' disability. However, Brooks' fourth amended complaint does allege failure to accommodate an actual disability. The parties have not fully briefed the accommodation issue, though Micron notes in its motion that, "[a]lthough this issue remains an open question in the Fourth Circuit, the majority view is that employers have no duty to offer a reasonable accommodation to employees who are merely regarded as disabled." *Bateman v. American Airlines, Inc.*, 614 F. Supp. 2d 660, 672 (E.D. Va. 2009). The Court declines to consider as part of the pending summary judgment motion the accommodation claim.

12

provided any factual basis for this claim, and that Brooks should be sanctioned for his continued pursuit of relief under this Count.

The Court concludes that there is no factual basis for Count II. At the time his employment was terminated, Brooks had not sustained any workplace injury and did not express any intent to file a workers' compensation claim. Neither Dr. Myerson, nor any other individual at Micron is alleged to have referenced worker's compensation in any discussion of Brooks' capabilities, job restrictions, or the ultimate decision to terminate Brooks' employment. There is no justification for awarding relief under Virginia Code § 65.2-308 based solely on allegations that Micron may have feared that Brooks might injure himself and that, if Brooks were to injure himself, he may be entitled to workers' compensation. Accordingly, the Court grants summary judgment to Micron on Count II of Brooks' Complaint. Based on the record before it, however, the Court does not find that sanctions are appropriate, and accordingly, Micron's motion for Rule 11 sanctions is denied.

## V. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment (Doc. No. 35) is granted and Defendant's Rule 11 Motion for Sanctions (Doc. No. 37) is denied.

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 30, 2010